IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**LEVI LLOYD HARVEY,**

                **Plaintiff,**

        v.                              **CASE NO. 11-3139-SAC**

**NORMAN D. WILLIAMS,**
**Chief of Police, Wichita**
**Police Department,**
**et al.,**

                **Defendants.**

**MEMORANDUM AND ORDER**

       This civil complaint, 42 U.S.C. § 1983, was filed pro se by a state prisoner currently confined at the Hutchinson Correctional Facility, Hutchinson, Kansas.  In the caption, plaintiff names four defendants: Norman D. Williams, Chief, Wichita Police Department (WPD); Lt. Steven A. Kenney, Instructor, Professional Standards Bureau (PSB); Wichita City Manager; and Det. Augustus E. Ross, WPD. Plaintiff lists 4 additional defendants that are not in the caption: Officer Brian Arterburn, WPD; John Doe I, WPD (supervisor of defendant Arterburn); Officer Jane Doe, WPD; and Detective John Doe II, WPD.

       Plaintiff attaches several exhibits and narratives to the inside of his form complaint.  From these materials, the factual background of the complaint appears to be as follows.  On September

14, 2008,[1] WPD Officer Arterburn "tazed" Mr. Harvey after he had surrendered and held his hands in the air.  Arterburn then removed the "tazer prods" causing plaintiff to "bleed excessively."  The female officer who booked plaintiff into the Sedgwick County Jail (SCJ) would not tell him how to file a complaint on "all that had occurred before transport to jail."  While plaintiff was in the jail, he wrote a complaint to "internal affairs," and in response the PSB sent him "a weaver (sic) form for appointed attorney to allow questioning or to await outcome of all pending cases before (he) could pursue this complaint."  Upon his release from jail, plaintiff went to the PSB at City Hall and spoke with "Det Chaney" who photographed his blood-soaked gray sweatshirt.  Plaintiff's attachments indicate that on March 6, 3011, he received a letter from Lt. Steven A. Kenney on behalf of the PBS of the Wichita Police Department, in which he was informed that the internal investigation on his complaint that had focused on Officer Brian D. Arterburn had been completed and the finding was "Exonerated."  Plaintiff also exhibits an "Appeal" that he wrote and dated March 9, 2011, to defendant Chief of Police Williams, in which he challenged the investigation.  Plaintiff attaches the written response of defendant Williams dated March 24, 2011, in which defendant Williams stated:

> During your interview, you stated you ran from the police because you thought you had

---

[1]     On-line records of the Kansas Criminal Justice Information System indicate that Mr. Harvey was sentenced in Sedgwick County in August 2009 for the offense of "Opiates, Opium or Narcotic Drugs; Possession; 1st Off" committed on September 14, 2008, and that he has two other active cases from earlier offenses.

> warrants for your arrest. After being ordered to stop, you stated you placed your hands in the air and began to turn towards the officer. The officer then deployed his Taser striking your arm. Neither you nor the officer articulated any additional force during your arrest.
> A cursory review of your arrest record from 2000 to 2005 indicates you have a propensity for violence. You were arrested twice in 2000 for Battery, once in 2001 and 2003 for Battery, twice in 2004 for Battery and once in 2005 for Battery.
> . . .

Plaintiff's request for City Manager Review Board was denied due to plaintiff's incarceration.

**CLAIMS AND REQUESTED RELIEF**

As Count I of this complaint, plaintiff asserts "hendering (sic) an investigation, obstructing justice", violation of due process, legal malpractice, and excessive force. He alleges in support that defendant Artenburn did not need to use a taser to apprehend him, and that Artenburn is not a medical professional and should not have removed the taser prods. He further claims that he should not have been transported to the jail before being examined by medical professionals for the loss of blood, which he claims could have been fatal.[2] In attachments, he states that the medical staff person at the "SCADF" was at best an LPN. He notes that Det. Chaney indicated that the police report stated that he was seen by an EMS.

As Count II, plaintiff asserts cruel and unusual

---

[2] Plaintiff's allegations regarding a delay in the filing of charges are not clear and are not supported by sufficient fact allegations. Nor do they appear at all relevant to his claim of excessive force.

punishment.  In support, he refers to his blood-soaked gray sweatshirt.

As Count III, plaintiff asserts excessive force.  In support, he re-alleges that he had already surrendered and his arms were in the air.

The relief requested by plaintiff is not at all clear, but appears to be an order that "the facts of this case" not be suppressed and a declaration that law enforcement personnel should not break the law while apprehending someone.

**FILING FEE**

The fee for filing a civil rights complaint is $350.00. Plaintiff has neither paid the fee nor filed a complete Application to Proceed Without Prepayment of Fees containing an affidavit on court-approved forms.  Mr. Harvey is again forewarned that under 28 U.S.C. §1915(b)(1), being granted leave to proceed without prepayment of fees does not relieve a plaintiff of the obligation to pay the full amount of the filing fee.  Instead, it entitles him to pay the fee over time through payments automatically deducted from his inmate trust fund account as authorized by 28 U.S.C. §1915(b)(2).[3]  Mr. Harvey will remain obligated to pay the $350 fee for each civil case that he has filed in this court.

Plaintiff has submitted an Inmate Account Statement as

---

[3] Pursuant to §1915(b)(2), the Finance Office of the facility where plaintiff is currently confined will be authorized to collect twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until the filing fee has been paid in full.

statutorily mandated (Doc. 2).   Pursuant to 28 U.S.C. § 1915(b)(1), the court is required to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action.  Having examined the records of plaintiff's account made available at this time, the court finds the average monthly deposit to plaintiff's account over that period has been $ 44.57, and the average monthly balance has been $ 14.43.  The court therefore assesses an initial partial filing fee in this case of $ 8.50, twenty percent of the average monthly deposit, rounded to the lower half dollar.  Plaintiff must pay this initial partial filing fee before this action may proceed further, and will be given time to submit the fee to the court.  His failure to submit the initial fee in the time allotted may result in dismissal of this action without further notice.

**SCREENING**

Because Mr. Harvey is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A(a) and (b).  Having screened all materials filed, the court finds the complaint is subject to being dismissed for reasons that follow.

**STATUTE OF LIMITATIONS BAR**

The applicable statute of limitations in § 1983 actions is determined from looking at the appropriate state statute of limitations and the governing tolling principles. See Hardin v Straub, 490 U.S. 536, 539 (1989); Brown v. Unified School Dist. 501, Topeka Public Schools, 465 F.3d 1184, 1188 (10th Cir. 2006)("The forum state's statute of limitations for personal injury actions governs civil rights claims under" 42 U.S.C. § 1983.). Thus the two-year statute of limitations provided by Kansas law applies to this action. While the length of the limitations period is governed by state law, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." Wallace v. Kato, 549 U.S. 384, 388 (2007). Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action." Id. at 388; Fogle v. Pierson, 435 F.3d 1252 1258 (10th Cir.), cert. denied, 549 U.S. 1059 (2007)("A § 1983 action accrues when facts that would support a cause of action are or should be apparent.").

On the face of the complaint, plaintiff alleges that defendant Arterburn, violated his constitutional rights by using excessive force during his arrest[4] and by removing taser prods from

---

[4] In addressing an excessive force claim, the issue is whether the arresting officer's actions were objectively reasonable. See Graham v. Connor, 490 U.S. 386, 397 (1989); Brooks v. Gaenzle, 614 F.3d 1213, 1219 (10th Cir. 2010)(citing Bella v. Chamberlain, 24 F.3d 1251, 1255 (10th Cir. 1994)("To state a claim of excessive force under the Fourth Amendment a plaintiff must show both that a "seizure' occurred and that the seizure was 'unreasonable'."). Relevant factors in making this determination include the severity of the crime, whether the subject posed an immediate threat to the safety of the officers or others, and whether the subject was resisting arrest or attempting to evade arrest. Id.

his body[5] on September 14, 2008.  He also complains of actions by defendant Doe who was Officer Arterburn's supervisor on that day, and that he was not provided adequate medical attention for bleeding caused by Arterburn's removal of the taser prods.[6]  The plaintiff filed his civil rights complaint on July 21, 2011, more than two years after the alleged violations occurred.  Nothing in the record suggests any factual basis for statutory or equitable tolling.  It is thus obvious from the face of the complaint that plaintiff's § 1983 claims based upon events that occurred at the time of his arrest were not timely filed and are barred by the statute of limitations.

**FAILURE TO STATE A FEDERAL CONSTITUTIONAL CLAIM**

The other defendants named in the complaint are not alleged

---

490 U.S. at 396.  In Graham, the Supreme Court further explained:

> [T]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . .  With respect to a claim of excessive force . . . [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

Id. at 396-97 (internal citations and quotations omitted).

[5] Plaintiff's allegations that defendant Arterburn was not qualified to remove the prods and that he could not have received adequate medical attention from an LPN at the jail are not shown to be based upon anything other than his lay opinion, and are not sufficient to establish that he was denied necessary medical treatment by any defendant.

[6] Plaintiff also complains about actions of the transporting and booking officer or officers on that day, and an alleged inaccuracy in the police report.  These acts, even if they presented any constitutional claim, are also barred by the two-year statute of limitations.

7

to have been involved in plaintiff's arrest, injury or transport to the jail. As far as the court can discern, those defendants are Chief of Police Williams, Detective Augustus E. Ross, Lt. Kenney, a John Doe WPD Detective that conducted an interview along with Kenney at the PSB, as well as John Doe Wichita City Manager. Plaintiff's claims against all but one of these defendants appear to be based upon his dissatisfaction with the administrative hearing process and responses he received from the PSB as to his request for an investigation regarding his arrest and a delay of charges that he addressed to Internal Affairs.

To state a claim for relief in federal court under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48-49 (1988); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978)); Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, --- U.S. ---- (2009), the United States Supreme Court held that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949 (quoting Bell, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court liberally construes a pro se complaint and applies

"less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555 (2007)(citation omitted). Put another way, there must be "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. Twombly, 550 U.S. at 558.

None of the facts alleged by plaintiff suggests that this court has jurisdiction to review the process and decision of the Professional Standards Bureau of the Wichita Police Department. Nor do plaintiff's allegations or his exhibits of the written responses he received indicate that any federal constitutional violation transpired during these city agency proceedings.[7] The

---

[7] Plaintiff states that he was not allowed to initiate his inquiry until he was released from jail. However, his allegations indicate that he could have done so had he and his appointed attorney executed a waiver allowing him to talk to city officials about his complaints. Plaintiff's detailed discussion of what occurred at the interview mainly reveals his disagreement with the findings and conclusion of the agency.

9

court is not obliged, and is at a loss, to construct a legal theory on plaintiff's behalf for a claim in federal court.

Plaintiff's claims against defendant Ross are even more difficult to decipher. He appears to be claiming that the charges underlying his arrest and of which he was eventually convicted were somehow improperly delayed. To the extent plaintiff may be claiming that he was wrongfully imprisoned as a consequence of this delay, his only remedy in federal court is by petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.[8] He may not challenge the legality of his confinement in a civil rights complaint.

The court finds from the foregoing that this action is subject to being dismissed under 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B) because plaintiff's claims are either time-barred or utterly fail to state a federal constitutional claim. Plaintiff will be given time to show cause why this action should not be dismissed for these reasons. He is forewarned that if he fails to show sufficient cause within the time allotted, this action may be dismissed without further notice. The court further finds that if plaintiff cannot show sufficient cause, this action should be treated as a strike pursuant to 28 U.S.C. § 1915(g).[9]

---

[8] Furthermore, habeas claims may not be raised in federal court until all remedies available in the state courts have been fully and properly exhausted.

[9] Section 1915(g) provides:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or

10

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff is granted thirty (30) days in which to submit to the court an initial partial filing fee of $ 8.50. Any objection to this order must be filed on or before the date payment is due. The failure to pay the fees as required herein may result in dismissal of this action without prejudice.

**IT IS FURTHER ORDERED** that within the same thirty-day period, plaintiff is required to show cause why this action should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED.**

Dated this 13th day of September, 2011, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge

---

detained in any facility, brought an action or appeal in a court that is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Id. If plaintiff acquires two more strikes, he will be required to "pay up front for the privilege of filing . . . any additional civil actions," unless he can show "imminent danger of serious physical injury." 28 U.S.C. 1915(g); Jennings v. Natrona County Detention Center, 175 F.3d 775, 778 (10th Cir. 1999).